The next case on this morning's docket is the case of Enterprise Leasing Co. St. Louis v. Linda Hardin And we have Brad Scafish for the appellant and we have Mr. James Flyer for the appellate Mr. Scafish, when you are prepared to begin, you may Yes, you may, sir. And you can reposition your chair if you like as well. Just don't get too close. Don't get too close. I think you can hear him there. May it please the court, counsel, and I'm going to apologize in advance. I may be coughing several times here. I hope you haven't heard me too much this morning. I have a cup here, so I thank you very much. You want a mint? I had a cough drop. I took it out because I don't like talking with him. Want a shot of whiskey? After the oral argument. Procedural history of this case is, it has to do with a granting of summary judgment by the trial court on the basis that the underlying claim was a negligence subrogation claim brought by the plaintiff and the trial court's ruling that such a claim was barred in these circumstances. Now, what we have here is the plaintiff appellant, my client, Enterprise, as I think everybody knows, is a rental car company. The defendant, Linda Harden, did rent a car from Enterprise. She signed a rental contract, paragraph 8 of which of the additional terms and conditions indicated, and I'm paraphrasing slightly, but that the renter shall indemnify Enterprise for any loss, liability, claims, demands, costs, terms, fees, or other expenses sustained by Enterprise in any manner from the rental transaction or use of the rental vehicle. Do you think there's any implied implication that it has to be any legally sustainable issue? I don't think so. No. It's got to be a legitimate claim, though, right? If it costs them an expense, then I believe that the rental contract would trump that. If somebody sues them, and even if it's a meritless claim or a weak claim, that they have to go to court, hire their own attorneys to defend that claim, they've incurred that expense. That's something that the implication is wrong. Why would anybody want to rent a car from Enterprise then if they've got a debt liability? It's totally beyond their control, right? It's beyond Enterprise's control as well. No, they're the ones that signed the check that said we settled. I'm not saying in a claim that they necessarily end up paying out, but if there's a meritless claim, you still may have to defend the claim, bad as it is, and certainly meritless claims are filed every day. They cause expense to the person being sued or being claimed against. Was there a suit filed here in this case? It did not get to that point because the claims were settled prior to that. So that is a distinction, certainly, here. What if they just voluntarily decided to pay out money to individuals? Well, and that's certainly an issue that was brought up. I don't think this is a situation. If it were truly voluntary where they decided to gratuitously make a payment to somebody who had no legal right thereto, then that wouldn't be an expense for a lawsuit. But here they don't have a legal right. They did not have a legal right to collect, correct? But the workers' cop, the injury claimants? Yes. Ultimately, that's what the trial court found, and that's what I think the facts would bear out, that they should not have had a legal right. I think the difference is, though, this was not voluntary in the sense that Enterprise ended up being in a superior bargaining position, as the courts have referred to in cases that define voluntary payments. They didn't make a payment out to someone knowing they didn't need to and then decide, you know what, we want that back. But they made a payment where apparently there was no legal basis for making that payment, and there was no court that was ordering them to make that payment. Well, a personal injury claim had been brought against them. Certainly that's a precursor to if we deny this claim, the personal injury claim's attorney has indicated, I'm going to go ahead and file a suit against you, and they had every reason to remove them. We haven't had a chance to look at the record yet. What does the record reflect as to the personal injury claim? Since there was no lawsuit filed, was there like a transmittal letter from attorney Koshin to Enterprise? I mean, what is the substance of the claim? What's the evidence of the claim? Providing the police report, providing the medical records. But there was a transmittal letter that says, I'm making a claim, I'm going to make a claim against Enterprise? I'm making a claim against your policy on behalf of my personal injury clients who were injured as a result. And it does not mention workers' comp. Is there any indication in the record that the attorney was committing a fraud? I think that's the inference. I mean, certainly that attorney's not on trial, so to speak, today, but I think that. . . It's uncontroverted that he knew that this was a work-related injury? Actually, wasn't there even a statement that it was a work-related? Yeah, to try to answer both your questions. I'm sorry. That's okay. He is the same attorney that had filed the workers' compensation cases on behalf of those same claimants. Prior to the transmittal letter? Yes. More than a year before that happened. Okay. There's a reference. I think the difference is it's not a situation where Attorney Cochin is saying, here's these personal injury claims on behalf of these workers' injury, workers' comp. clients, which for some reason I believe I have a third-party claim against you. There's references in the medical reports that these people had claimed a work-related injury. They're not explicitly stated by Attorney Cochin himself, and you'd have to dig through the records. That still wouldn't lead the adjuster reviewing the file to the conclusion that this itself should have been a workers' compensation claim because for that to be the case, it can't just be a somehow work-related injury. It would have to be a claim against a person who is also a co-worker and that they were all in the course of their – the scope of their employment at the time. There's no indication of that. And Attorney Cochin's affidavit essentially just says, well, he never asked. I mean, that's – you know, I'm jumping around a little bit, but there's some references in our brief to the statement in the Jansman case that a little bit more should be expected in the conduct of litigation than the morals of the media. Is there a count against Attorney Cochin in your lawsuit? No, there's not. That would be a separate – I mean, this was simply a breach of contract case. Separation or indemnification. And that's the distinction between separation and indemnification that we needed to make. On my point about that – that quote about the morals of the marketplace, it's not just there for – because it's a nice quote and it has rhetorical power. This is a situation where an attorney who knows better, who has already represented these same people for their workers' comp claim, submits a claim again for the same injury damages to an adjuster, an officer. He's not a party, though, to your lawsuit. He's not a party. But my point being that the adjuster at Cambridge on behalf of Enterprise had a reason to believe this person. I mean, should the adjuster be in a position where they have to question the attorney or his lawyer? An innocent party should be on the hook then that had nothing to do with it at all, other than the fact that she signed this farm contract months before this happened or weeks before or days before it happened. I don't agree that she's a completely innocent party. What you see in the record from the affidavit of Mr. Cardelloni, the adjuster on behalf of Enterprise, is that phone calls were made to Ms. Harden and letters were sent out to her which were completely ignored. This is a woman who was a co-worker of these individuals who, through an act of dishonesty, were obtaining double recovery. She could have responded to a phone call. She could have responded to the letters of somebody who's telling you, we're providing coverage. We're trying to investigate this claim. And she completely ignores everything. It would have taken very little for her to advise them, you know what, we were co-workers. We were coming back from a job interview. Were they asking her that? They sent out letters. They never got to ask that. See, it was just not something that Enterprise had any idea could have been the case. So there wasn't an explicit question. Well, then how was she in any way thwarting their investigation and their pursuit of the claims? She herself didn't make a claim? She did not make a claim. Okay. But you're saying she should have come forward and advised them that they were, in fact, co-workers and not? She should have cooperated with the company. I think that she has a duty pursuant to the contract and what she's been given correspondence. Why hasn't there been a claim filed for fraud against the attorney? I don't know if there could be. I guess that would be separate from this litigation. I don't know if it would be tied up as an additional claim in this particular litigation. Essentially, we did not expect this case to be removed from court on summary judgment. I believe the court erred in treating this as a simple subrogation matter when it wasn't anything of the case. There's no reference in the complaint to subrogation, which would be required if it were, in fact, a subrogation cause of action. There is reference to acts of negligence, but there's not an allegation of duty and breach. It's not a negligence complaint. It's a breach of contract complaint that uses the underlying… What were the policy limits on this case? Well, the policy limits were what was dictated by Illinois financial responsibility law because essentially you had a woman that was otherwise uninsured for her use of this vehicle, and the Illinois financial responsibility law requires the renter of vehicles for public use to cover the public for bodily injury under a policy of $50,000 per individual or $100,000 per occurrence. So if you guys were to settle for $100,000, the renter would be on the hook for $100,000? That would be the claim for indemnity that we would be making back against the renter under the terms of the contract. It goes back to the fact, doesn't there have to be a legal basis for a claim? Well, the legal basis for the claim that is being asserted is indemnity under the contract. No, I'm saying there was no legal basis for these individuals to bring a claim. They were prohibited under the work comp statute from proceeding with a negligence claim against the co-employee, correct? Yes. So there was no obligation at all for Enterprise to pay their claims, correct? There was still a claim brought against it. There was no obligation for Enterprise to pay a claim, was there, under the law? Unbeknownst to Enterprise, correct. I think there's still – the distinction is Enterprise, even knowing that, would have been faced with defending a claim. Let's say in doing so, all they expended was $500 to pay their own attorney to file something to dismiss the claims that were brought. There was a claim. I mean, there never was a legal suit brought, correct? Because it didn't get to that point, but there was a – demand letters were sent by a personal injury attorney, the clear implication of which is that if you don't settle this claim, I'm going to file a suit against you. They tried to do so in a way – At that time, you all would have laughed him right out of court, thinking, wait a minute, you would have found out that this was prohibited by the workers' compact. Had Enterprise been aware of that fact? Well, I mean, eventually you would have, right? Yes, but that still would have come at expense to Enterprise. Even if they did a super file and they filed immediately – So even a bogus claim, the renter is on the hook for attorney fees for a bogus claim. That's what she contracted to. There's no allegation that the contract itself is unconscionable. Those are the terms that she's agreed to identify Enterprise for any loss, any attorney's fees, any costs that are brought about in any manner from the real transaction or use of the vehicle. So maybe the panel feels that this should have been something that could have been resolved for $500 to $1,000 in attorney's fees in picking out a clearly bogus claim. That's still some cost, and that would be a reason why summary judgment should have been denied. It should have been the jury to determine factually what costs really and truly were related to this claim that was brought against Enterprise. Maybe the jury would find that you should have never paid out $16,000. You should have paid out a few hundred dollars to your attorneys to fight this because you were fighting a bad claim. But that's still some loss, and as the court knows, the summary judgment is a very drastic remedy. It shouldn't be brought when there's a clear right to it, and in this case, that burden wasn't sustained. I would point the court in our brief to the court's regret for the difference between indemnity and subrogation. We cite the Dixon v. Chicago case for the idea that indemnity is the obligation of one party to pay the loss of another. It can be brought about contractually, as in this case, or due to the relationship of the parties. We cite Dix v. Laframboise for the proposition that subrogation is defined as when one who involuntarily pays the debt of another succeeds to the right of the other. And it's kind of tying both together, the Holmes v. Cincinnati case. It defined the differences. Indemnity is when you're proceeding on your own rights. Subrogation is when you're proceeding on somebody else's rights, and that's what was happening. The Enterprise was proceeding under its own rights under the contract. If the court felt that that claim wasn't great, that it was weak, that there were maybe some factual problems, that's one thing. What the court did is— But you're trying to recoup a loss that has no legal basis for it. It's a prohibited loss. Well, as I said, we feel that a loss was sustained regardless of whether the underlying claim was meritorious or not. A loss was sustained by the fact that those individuals brought a claim, and Ms. Harden had already contractually agreed to indemnify for that loss. She could have bought an additional supplemental waiver for—that's why I believe— But then if we buy that, then what would keep Enterprise from never ever checking any basis, legal basis for it? I mean, I could file a claim for something totally bogus, and the one who leased the car would be on for it. You're saying that they have no obligation at all to look to see if there's a legal basis to a claim. I think they have an obligation to conduct a reasonable investigation into the claim. I think in this case, they were deliberately misled by the claimant's attorney. Did they ask whether or not there was a comp suit going on, since they knew that both injured parties were— I mean, did they ask what was the nature of the comp suit, since they actually knew there was a comp claim filed by both of the injured parties submitting claims? I don't believe the record will show that. Mr. Carbononi, in his affidavit, indicated that he was unaware. He was never advised of the fact that there had been a comp suit. Essentially, he just had no reason to believe that. I understand in this case, after the fact, it looks like, well, that's something you should have known. But in every insurance case, there may be dozens or hundreds of valid defenses, but if nothing raises the possibility of those to be at the adjuster, it would be unreasonable to say that you should have gone to great lengths on every single possible defense to try and tease out something when somebody had essentially represented to you that that is not the defense. So am I wrong in understanding that there was information given to the adjuster, that there was a comp claim filed by these two individuals? I think it's incorrect that there was information given. The information would have been he would have had to look at the medical reports and see that according to them that there had been claimants reporting a work-related injury. There's no reference by the attorney's correspondence that there was actually a workers' comp claim pending. You're saying that adjusters don't look at the medical records? I mean, don't they verify whether or not they actually arise from the incident in question? I mean, I thought they pored over medical records. I would agree that they do do that. In this case, in his review, Mr. Carmine didn't reach the conclusion that this was a workers' compensation claim that would also involve Linda Parton. I think that's another part of the nexus that these two individuals could have been, of course, in the scope of their work, and they could have been valid workers' compensation claimants and still could have been getting a ride from a stranger, a friend, a relative, somebody that had no work relationship with them. And if she's not a co-worker in the course of the scope of her work, then the claim is legitimate against her as a legitimate third-party personal injury claim, notwithstanding the underlying workers' compensation claim. As we've argued, we don't feel the voluntary payment doctrine is even relevant because this is not a situation where we're seeking to recover the payment from the individual or entity that the payment was made to, and because Enterprise made the payment not gratuitously but under a legitimate belief that they were compelled to do so by all financial responsibility. No, but actually under that financial responsibility law, there's no obligation to pay a claim that arises without a legal basis, is there? No, that would not compel them to pay a non-meritorious claim. But again, to call it voluntary suggests some act of gratuity or something where they are in the superior bargaining position and nevertheless make a payment to somebody in an inferior bargaining position. Here, they were the ones who had been duped, essentially, into making a payment to somebody who had more knowledge of what was going on, not an unsophisticated person, an experienced attorney who knew exactly what he was doing and apparently succeeded in deliberately cultivating a double recovery. And I think there's a difference. What's his name on the settlement check? On the… 16,000 or whatever. I thought I saw it somewhere in there. I can't give you a citation of the record. I believe it was. I mean, I know that's the normal course with a settlement. So he knew exactly what was going on, that he was collecting… He was the same attorney who had filed the first compensation case. And there's a reference maybe in the response… Has he been reported to anybody about that? Not that I'm aware of. Yeah, I mean, it's obviously a matter of… Plaintiff hasn't done that, right? Right. I think as this matter is pending… Why not? If your client thinks that there's been a fraud committed on it and then actually the court, too, why hasn't he been reported? That may be something that will still be yet to come. As this matter is pending, the ruling of this court and any other proceedings may be instructive as to what course of action is appropriate next. I have another question. Ms. Harden, I think you made a remark that sounded like you were… felt or you believed that she was not cooperating the way she should under the contract. Isn't that a way to avoid payment under a contract if you have the… Isn't there a responsibility under the contract for the person signing the contract with the insurance company to cooperate in the investigation of claims? I think there's a difference here. I would say no, and the reason is this was not a payment made pursuant to a situation where Linda Harden buys policy from, say, Allstate, then Allstate policy gets claimed against and she refuses to cooperate where she bought the liability insurance. She had a contract to rent a car, and Illinois financial responsibility law requires the 5100 policy. Essentially, there's no written policy, but it requires payment to be made as if there was a policy of $50,000 per person. So she had no obligation at all to interject herself into the claims of the passengers. She wasn't party to a contract with Enterprise. This may have never gotten to a brief to the indemnity situation if she had simply cooperated with them in determining whether there was something that would ultimately need to be indemnified. It took very little for her to answer a phone call or respond to a letter, and a lot of this may have been avoided. It also would have taken very little for the adjuster, once he found out that the injured parties were making workman's compensation claims to determine whether or not the driver of the car was a co-employee. Well, I mean, the way he would have done that is either by talking to Linda Harden, by talking to those individuals, which he couldn't do because they were represented by counsel, or by talking to attorneys who had already made one misrepresentation to him. And what was the misrepresentation that he made? I think there's clearly an implicit misrepresentation that you have in the meritorious claim when you file a worker's compensation case for certain injuries, and then you... Well, actually, I don't know if that's the problem so much as if you get a double recovery. Because, I mean, there are situations where the comp may be disallowed, and then he could have proceeded with the claim against the personal injury claim, correct? Yes. I think that argument was made in the response brief that maybe he was just being careful, and there's reasons you might do both. I think the indication is that's not the case here. When he, over a year after the comp claim was filed, filed the personal injury claims. He knew that that claim, if it had not already been resolved, was being upheld by the courts. It wasn't a matter where, for some procedural or technical reason, that there was... Presumably, his name was on the check also. I presume, yes. Thank you for your argument. I know we took a lot of your time, but those were important questions, and thank you for your answers. Thank you. You'll get the opportunity to rebut. Mr. Flyer, when you're ready to proceed. May it please the Court and the Council. My name is James Flyer. I represent Linda Harden, a part-time housewife, part-time employee of a Regis appraisal service, and a suit brought by Enterprise Leasing. Most of the questions I want to ask both the Council for problems that I see with the case, you've already talked about. This is, maybe I'm oversimplifying. Yes, I remember, if you believe it, about 60 years ago, when Eisenhower started law school, we had a rather salty professor, and he was talking about a tort case, and he said, now, this should be obvious even to the simple-minded. Right, Mr. Flyer? And I thought to myself, well, this, and I think to me, maybe I'm oversimplifying this. But this is a situation. I think it's kind of a syllogism. The premise is, the statute clearly insulates Linda Harden from a claim against a co-worker. No question about it. The Supreme Court has so said. The statute says. No argument. Next premise, there's no question that all of these people were employed by Regis. No question. Now, how do you get to that? But those two issues are not even in dispute. Now, how can you have a conclusion if she's insulated by a suit against a fellow employee, and they are fellow employees, how can Enterprise jump in there voluntarily, make a payment, and then sue Linda Harden? It just can't happen. It just can't happen. They can call it subrogation. They can call it indemnity. Your Honor, there was never a suit filed. Never a suit filed. Enterprise jumped in there and made this payment. Now, what would have happened? I don't know. But Mr. Cardelloni would have to be deaf, dumb, and blind not to know. And you look in the record at page 80 of the record. There's a ‑‑ I read an affidavit, Mark Colchin prepared an affidavit in my response to the plaintiff's supplemental response for the summary judgment. That thick of medical records, and most every one of them indicated a work‑related injury. How could Mr. Cardelloni, a sophisticated claims person, expect Linda Harden, an uneducated housewife, to tell him what the law is? Anything in there to show what the possible legal basis would have been? Well, Judge, it's just simple. Mr. Colchin is very prudent. He filed a comp case. No question he filed a comp case for both these people. But if he can get better money elsewhere, why can he not? And that's what he did. Cardelloni had correspondence with him. But Colchin, he had an alternative. And there's a case in my brief where I say that it's not wrong to file a comp case and a first‑degree case. Now, he didn't file a first‑degree case, but he made a claim. And if Cardelloni wants to jump in there and pay him, it would be foolish not to take it. Now, Colchin never, never at any time, his demand package put all the records in there about work‑related injuries. Mr. Cardelloni is supposed to be a sophisticated trans person. Had he already settled the comp claims at that time? Had he already settled the comp claims? No, he never was paid any comp. I think the fact is, I think the records show, maybe one medical bill was paid. But otherwise, no, there's no TPD, no permanent partial, nothing for the comp. And obviously, as you know, a comp case, in many instances, has much more limited value than just a record B.I. claim. So do we know the outcome of the comp case here? Do we know the outcome of the comp case? They never, they've just been dismissed. So there was no double recovery? That never happened. So there never was a double recovery? No, ma'am. No, ma'am. Was there a motion to dismiss? I can go outside the record and say this to you, that the Regis was prepared to pay the comp. They were prepared to pay the comp. But it never was submitted in that fashion. As I say, it's outside the record. Was there some question as to whether this was work‑related then? Is that the reason why the comp claim wasn't? Why it wasn't, the comp wasn't due. Right. Maybe there was some factual question as to whether or not this was work‑related. No, I don't think anyone ever disputed that these were work‑related. Even the enterprise. They have not said they're not work‑related injuries. They have not said that they weren't public employees. Well, now you've said, Mr. Blight. If it's so sad that you can just ignore the law by saying I didn't know any different, I won't get it. I mean, it can't be. Bartolone can't say, well, I couldn't get a hold of Linda Harper. But he knows that they're comp cases. It's his duty to check. If he didn't check it out and the law doesn't give any exceptions for not checking it out, then that's his fault. And the case ‑‑ there's a case in my brief for him. Does the record reflect when the comp cases were dismissed? Your Honor, you're asking a question I don't know. Okay. I know they weren't pursued. But you're saying either in the record or outside the record. You know that the comp claims have been terminated? Your Honor, I can't believe that that's a question I can't answer. Okay. Whether the comp case was terminated, they weren't pursued, there was no payment made. So there was no double recovery. There was no double recovery in this case. Well, let me back up on that. If there was a partial comp payment, there's a partial double recovery, correct? Well, Your Honor, as I say, I think the record, I think Mr. Colchin's record indicates that there may have been a medical bill paid. Well, that's partial, isn't it? Wouldn't that make it a partial recovery? Well, I ‑‑ Or are they going to give it back? You're asking me something I don't know. I don't know. I just know that the comp cases were filed and were not pursued. And to my knowledge, they're off the board. There's no ‑‑ But they kept the money for the partial medical. You don't know. Okay. I didn't have a comp case. All I know is that Enterprise made a voluntary payment when they didn't have to in the story. Linda Hart, they paid on behalf of Linda Hart. Actually, Enterprise, under this contract, insures her if she has no insurance. I can't get into other aspects of that, but the fact is they made a voluntary payment. No suit pending, voluntary payment, when they didn't have to make the payment. Linda Hart was insulated by the Work Call Act. End of story. And I don't know how I was going to separate you from me. Thank you. Thank you, Mr. Blyer. Thank you. Mr. Skafish. Is it Skafish? Skafish. Skafish. Thank you. You have opportunity to rebut. One of the first things Mr. Blyer said was that the statute would clearly insulate Linda Hart from a claim against a coworker. The problem here is the statute doesn't insulate Linda Hart from a breach of contract case. Whether or not there should have been payment, the court's ruling in granting summary judgment was simply that the passengers had no right to file a negligence case, that Enterprise paid the claims of the passengers and therefore stepped into their shoes, and since they had no right to a negligence case, Enterprise had no right to a negligence case. Are you aware of any double recovery other than the partial medical bills that Mr. Blyer talked about? Are you aware of any type of double payment that would establish some type of fraud on behalf of the other attorney? In truth, I don't know any more of the factual. Because that was the indication I got from your argument. And that was my understanding, and I know Mr. Blyer made me question that. And it sounds like his understanding is there was at least a partial double payment because some medical was paid. Even if that's minimal, of course his statement is true that you typically can get more in the workers' compensation case. Less, I think. Less in the workers' compensation case and more in the personal injury case. And his comment that if Mr. Koshin could get better money, why not? Well, I mean, why not is because it's unethical. There's a problem in doing so, and you're implying to the person you're bringing the claim against that you have some money. Well, unless there's some factual issue there as to whether or not it was in the line of employment or something else. I mean, they don't have to disprove their cause of action, do you? No, I mean, going with what Mr. Blyer said, if these cases were, in fact, dismissed, not pursued, and there was some factual question, then I think that puts us in a different situation, that maybe there wasn't anything wrong at all with Enterprise making those payments. Maybe this was not to be considered a work injury. And if that line of reasoning is to be believed, then you have a valid subrogation case. So if you take that to heart, then the court was just wrong because there was a right to a subrogation case. But aside from that, this trial court ruling can't stand for this particular complaint. The complaint is brought on a breach of contract cause of action from the indemnity clause. The court didn't say, we don't see how there could be damages here. The court said there's no subrogation cause of action because they can't step in the shoes of these people who had no claim. But that's not the claim that was being brought. As this ruling applies to the complaint that was being addressed by the trial court, it's clearly erroneous. We would ask for this court to reverse the decision of summary judgment and remand this case for further proceedings. Thank you very much. Thank you both for your briefs and arguments.